**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
Eastern Division**

| | | |
|---|---|---|
| REACHOUT TECHNOLOGY CORP., a Delaware corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: |
| LUCIANO AGUAYO, an individual, and ARMANDO GONZALEZ, an individual. | ) ) ) ) | |
| Defendant. | ) ) ) | |

**COMPLAINT**

Plaintiff, ReachOut Technology Corp. ("ReachOut"), in support of its Complaint against Defendants, Luciano Aguayo ("Aguayo") and Armando Gonzalez ("Gonzalez"), alleges as follows:

**INTRODUCTION**

1. This case is about particularly egregious fraud and misconduct perpetrated by Aguayo on behalf of himself and Gonzalez in connection with the sale of his business to ReachOut, a Mokena, Illinois based provider of IT and cybersecurity services to small and medium sized businesses.

2. In October 2023, ReachOut acquired 100% of the membership interests of El Paso-based RedGear, LLC ("RedGear") from Aguayo and Gonzalez. The purchase price was paid, among other things, in the form of cash and a promissory note (the "Note") with a 60-month repayment term. Aguayo and Gonzalez collectively are the lenders pursuant to the Note. A key part of the consideration to ReachOut was that Aguayo work for the company as Director of

Business & Growth post-closing, and thus that Aguayo would owe fiduciary duties as an agent and employee of ReachOut.

3. Since the transaction closed, ReachOut has become aware of troubling misconduct by Aguayo, including allegations of misappropriation of corporate resources, funds, and opportunities. Aguayo is wrongfully directing a full-time ReachOut employee to perform work that benefits his personal company. He is diverting ReachOut funds to pay lease payments to a business he owns, book first-class airfare, and pay for other extravagant expenses contrary to ReachOut's policies and principles. He misrepresents to ReachOut clients that he still owns the business and conceals that an acquisition occurred. To make matters worse, when an employee brought to light one instance of his fraud, he treated the individual so badly that they left the company.

4. In addition to his misconduct since becoming an employee, ReachOut has learned that myriad representations and warranties made by Aguayo in the purchase agreement as an inducement to the transaction were false. Aguayo failed to disclose (and pay) commission compensation allegedly owed to an employee who is one of his childhood best friends, did not disclose the fact that he had not paid Texas state franchise taxes, and failed to disclose that a company vehicle worth more than $50,000 was "missing" while nonetheless asking ReachOut to continue to pay for it.

5. Aguayo's self-dealing and deliberate misrepresentations reduce RedGear's earnings below represented levels, rendering the purchase price paid significantly greater than the actual financial performance justified. Aguayo's breach of fiduciary duties have also deprived ReachOut of a fundamental benefit of its bargain. Aguayo's fraud induced ReachOut to make a

cash payment and enter into a promissory note it never would have entered into had it known the truth about Aguayo and RedGear.

6. To make matters worse, Aguayo has falsely claimed that ReachOut was late in making a payment under the Note, claiming the entire amount should be accelerated and thus avoid further expected contractual reductions in the amount owed under the Note. However, no payment was required because ReachOut properly exercised its set-off rights pursuant to the transaction documents because, as a result of his fraud, the amount owed under the Note has been materially reduced and should be eliminated altogether.

7. Enough is enough. ReachOut is filing this lawsuit to seek compensation for Aguayo's past frauds and to stop his ongoing misappropriation of ReachOut's funds and business opportunities.

## PARTIES, JURISDICTION, AND VENUE

8. Plaintiff ReachOut Technology Corp. is a Delaware corporation with its principal place of business in Will County, Illinois. For diversity purposes, ReachOut is a citizen of Delaware and Illinois.

9. Defendant Luciano Aguayo resides in El Paso County, Texas. For diversity purposes, Aguayo is a citizen of Texas.

10. Defendant Armando Gonzalez resides in El Paso County, Texas. For diversity purposes, Gonzalez is a citizen of Texas.

11. Prior to the closing of the transactions at issue in this case, Aguayo and Gonzalez each owned 50% of the membership interests of RedGear, LLC. At all relevant times, Aguayo acted as an actual or apparent agent of Gonzalez.

12. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because it is a dispute between citizens of different states where the amount in controversy exceeds $75,000.00.

13. This Court has personal jurisdiction over Aguayo and Gonzalez because Aguayo and Gonzalez agreed to jurisdiction in the state or federal courts situated in Cook County, Illinois in the Note and Membership Interest Purchase Agreement (the "MIPA"), or, alternatively, because pursuant to 735 ILCS 5/2-209(a)(2), Aguayo, on behalf of himself and Gonzalez, committed a tortious act within Illinois, or, alternatively, because pursuant to 735 ILCS 5/2-209(a)(7), Aguayo and Gonzalez made or performed a contract or promise substantially connected with Illinois.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred here or, alternatively, pursuant to 28 U.S.C. § 1391(b)(3) because Defendants are subject to personal jurisdiction here.

15. Pursuant to the subject agreements between the Parties, Delaware law governs this dispute.

## BACKGROUND

**A. ReachOut.**

16. Founded by CEO Rick Jordan ("Jordan") in 2010, ReachOut's mission is to democratize advanced cybersecurity and IT solutions by bringing highly sophisticated services to small and medium sized businesses that traditionally could not afford them. While IT systems and cyberthreats have grown more sophisticated and more central to the functioning of all businesses, cutting edge services in these areas were typically beyond the financial reach of smaller businesses. ReachOut uses technological advancements like cloud-based systems plus the unique and scalable

operational and customer service models developed by Jordan and his leadership team to bring highly sophisticated cybersecurity services to smaller businesses.

17. ReachOut recently became a public company through a reverse merger with a pre-existing public entity. Using its new public company platform, ReachOut has acquired a number of smaller IT service providers with the goal of establishing a nationwide presence and footprint.

### B. Luciano Aguayo and Armando Gonzalez.

18. Aguayo was previously CEO and 50% owner of RedGear, an El Paso, Texas-based small IT services provider. Gonzalez owned the remaining 50% of RedGear, which had a customer base made up primarily of small and medium sized business and educational institutions and appeared to be a good fit with ReachOut.

### C. The Transaction.

19. ReachOut purchased 100 percent of the membership interests in RedGear pursuant to the MIPA. The transaction proceeded normally and included a standard due diligence period during which ReachOut requested data about the business, finances, and performance of RedGear to evaluate the deal. The purchase price for the deal was paid in the form of some cash at closing, a loan to be repaid over a 60-month period with certain adjustments specified in the Note, and compensation (including bonus opportunity) Aguayo and Gonzalez could earn while working for ReachOut post-closing pursuant to employment agreements. A key portion of the consideration to ReachOut was Aguayo and Gonzalez's agreements to continue working for the business post-transaction.

20. The deal included standard representations and warranties on key issues reinforcing Aguayo's and Gonzalez's obligations to provide truthful and accurate information about the current state of the business of RedGear and its future prospects, including

representations about RedGear's financial condition, absence of undisclosed liabilities, compliance with laws, and lack of undisclosed employee compensation schemes.

21. Specifically, Aguayo and Gonzalez made numerous representations and warranties, including but not limited to the following:

22. **First,** Aguayo and Gonzalez represented and warranted that each of RedGear's Financial Statements were accurate, correct and complete, based upon and consistent with information contained in the books and records of the Company (which books and records were in turn accurate, correct and complete) and fairly presented the financial condition and results of operations of RedGear. (Ex. A at Section 4(d)).

23. **Second,** Aguayo and Gonzalez represented and warranted that since the March 31, 2023, RedGear had not entered into, modified or terminated, or agreed or promised to enter into, modify or terminate, any employment or consulting agreement, or otherwise increased (or agreed or promised to increase), or made (or agreed to or promised to make), any other change to the compensation and terms of employment and/or service (including with respect to salary, wage rate, bonus, sales commission, award, grant, benefits, employment status, title, and equity-based or equity-linked compensation) payable or to become payable to any managers, member-managers, officers, employees, consultants or independent contractors of the Company in excess of $15,000 individually or in excess of $50,000 in the aggregate. (Ex. A at Section 4(e)(v)).

24. **Third,** Aguayo and Gonzalez represented and warranted that since March 31, 2023, RedGear had not failed to promptly pay and discharge current liabilities. (Ex. A at Section 4(e)(vi)).

25. **Fourth,** Aguayo and Gonzalez represented and warranted that no undisclosed Liabilities existed, whether arising out of any transactions entered into, or any action or inaction,

or any state of facts existing at or prior to the Closing Date or otherwise. (Ex. A at Section 4(f)). Liabilities specifically include any obligation of any kind or nature whatsoever, and whether due or to become due and regardless of when asserted. (*Id.* at Appendix A, "Liability"). Notably, in the Disclosure Schedules that Defendants furnished in connection with the Purchase, Defendants list RedGear's Liabilities as "None."

26. **Fifth,** Aguayo and Gonzalez represented and warranted that RedGear was not bound by any undisclosed contract for the employment of any person on a consulting basis or as an independent contractor and that RedGear did not have undisclosed independent contractors. (Ex. A at Section 4(l)(i)(A); Section 4(o)).

27. **Sixth,** Aguayo and Gonzalez represented and warranted that RedGear was not bound by any undisclosed contract involving a future potential Liability or receivable in excess of $20,000 on an annual basis or in excess of $50,000 over the Contract term. (Ex. A at Section 4(l)(i)(N)).

28. **Seventh,** Aguayo and Gonzalez represented and warranted that RedGear was not bound by any undisclosed contract that is material to the Business, taken as a whole. *Id.* Notably, in the Disclosure Schedules that Aguayo furnished in connection with the Purchase, Aguayo lists RedGear's Employment Offer Letters/Agreements.

29. **Eighth,** Aguayo and Gonzalez represented and warranted that RedGear had complied with and was in compliance in all material respects with all laws, rules and regulations applicable to it, including but not limited to employment-related laws. (Ex. A at Section 4(g)(i)).

30. **Ninth,** Aguayo and Gonzalez represented and warranted that RedGear's properties and assets were in operable condition and repair in all material respects and were useable in the ordinary course of business. (Ex. A at Section 4(h)(i)). Such properties and assets purportedly

included RedGear's Leased Real Property, meaning RedGear's rights under all legally binding leases, pursuant to which RedGear held a lease "used in the operation of the Business as then-presently conducted, including . . . the BlackGear Lease Agreements." (Ex. A at Appendix A, "Leased Real Property").

31. Each of the foregoing Representations and Warranties were false at the time Aguayo and Gonzalez made them.

32. Aguayo and Gonzalez knew or should have known that the foregoing Representations and Warranties were false at the time he made them.

33. Aguayo and Gonzalez intended that ReachOut rely upon the foregoing false Representations and Warranties and ReachOut did so rely in consummating the purchase of RedGear.

34. ReachOut has been damaged by Aguayo's and Gonzalez's false representations and warranties in an amount greater than $75,000, exclusive of interest, costs and attorney's fees. Among other things, ReachOut would have paid materially less for RedGear had it known the truth about Aguayo and Gonzalez's false representations and warranties.

**D. The Promissory Note.**

35. The Note was part of the consideration ReachOut provided to Aguayo and Gonzalez in the transaction. The Note functioned as an earnout – the principal amount would vary depending on the performance of the business during two periods of time – First, the trailing twelve months prior to the close of the transaction (the "TTM Period"), and second, the 12-month period ending on the first anniversary of the transaction.

36. Under the terms of the Note, Aguayo and Gonzalez had the opportunity to receive a larger sum if the company's performance exceeded the target or a lesser sum if it came in under the target.

### E. Aguayo's Employment Agreement.

37. In addition to acquiring Aguayo's membership interests in RedGear, a key inducement to enter into the transaction was Aguayo's agreement to work for ReachOut post-closing. At closing, Aguayo entered into an Employment Agreement with a wholly owned subsidiary of ReachOut to serve as Director of Business & Growth in return for a salary of $125,000 per year and options to acquire 305,607 shares of ReachOut's stock at an option price of $1 per share. During the term of the Employment Agreement, Aguayo agreed to provide his undivided attention to the company's business – he agreed "not to perform services for any other person, business, or entity unrelated to the Company, whether as an employee, independent contractor, or otherwise without the prior written consent" of ReachOut.

### F. Post-Closing, ReachOut Discovers Material Misrepresentations.

38. On or about September 22, 2023, ReachOut provided Aguayo with a "Welcome to the Family Video" and requested that he circulate same to RedGear's clients (the "Clients") to notify them of ReachOut's acquisition of RedGear on October 2, 2023. Aguayo refused to do so.

39. On at least three occasions between the Closing and March 4, 2024, ReachOut asked Aguayo to communicate to the Clients that ReachOut had acquired RedGear.

40. Not only did Aguayo refuse to do so, he continued to misrepresent to the Clients that he is still the owner of RedGear.

41. As a result, on March 5, 2024, ReachOut itself communicated to the Clients that it had acquired RedGear.

     *i.*  *Aguayo Omitted Significant Monies Owed to His Childhood Friend.*

  42.  After the Closing, ReachOut learned that a RedGear (now ReachOut) employee and childhood friend of Aguayo was owed $25,000 for a current commission. In fact, Aguayo had neglected to pay that employee commissions owed for the prior four years, creating a potential six-figure risk of liability. Thus, the representations and warranties contained at Sections 4(d), 4(e)(v), 4(e)(vi), 4(f), 4(l)(i)(A),(N), and 4(g) were false.

     *ii.*  *Aguayo Misrepresented Usability of Leased Property*

  43.  After Closing, ReachOut learned that one property (the "BlackGear Property") owned by an entity controlled by Aguayo and leased to RedGear was not in operable condition or repair, nor usable in the ordinary course of business. Thus, the representations and warranties contained at Section 4(h)(i) were false.

  44.  After Closing, ReachOut learned it cannot use the BlackGear Property without extensive construction.

     *iii.*  *Aguayo Misrepresented RedGear's Failure to Pay Texas Franchise Taxes*

  45.  After Closing, ReachOut learned that RedGear failed to pay Texas state franchise taxes for 2022 despite the clear representation that all taxes were paid. ReachOut was forced to make this payment, which also negatively impacted the accuracy of RedGear's financials and financial performance. Thus, the representations and warranties contained at Sections 4(d), 4(e)(vi), 4(f), and 4(g)(i) were false.

  **G.** **Aguayo Misappropriated ReachOut Funds And Opportunities Post-Closing.**

  46.  In connection with the acquisition, Aguayo agreed that he would not, on his own behalf or on behalf of his Affiliates, directly or indirectly own, operate, manage, control, engage in, participate in, invest in, permit its name to be used by, act as a consultant or advisor to, or render

competitive services for any Person that engages in or owns, invests in, operates, manages or controls any venture or enterprise which directly or indirectly engages or proposes to engage in Activities competitive with the Business anywhere in North America. (Ex A at Section 8(g)(i)).

47. ReachOut agreed that the foregoing would "not apply with respect to Luciano Aguayo or Luciano, LLC providing **limited** consulting services to [Two Specified Clients]." (*Id*. (emphasis added)).

48. Although Aguayo may provide limited consulting services to the Two Specified Clients thereunder, he has far exceeded the scope of the permitted limited consulting services to at least one such Client (the "Consulting Client"), conducting approximately $7,000 per month using a full-time ReachOut employee.

49. Aguayo also, contrary to ReachOut company policy, booked first class airfare for himself using ReachOut funds, demonstrating his willingness to use the company as his personal piggybank.

50. ReachOut brings this action to put an end to Aguayo's malfeasance and recover misappropriated funds and opportunities.

## SUBSTANTIVE COUNTS

### COUNT I
### Common Law Fraud Against Defendant Aguayo

51. ReachOut realleges and incorporates the allegations contained in Paragraphs 1 through 50 as if set forth herein, and further alleges:

52. Aguayo falsely represented or omitted facts that he had a duty to disclose, including but not limited to the following "Representations and Warranties of Sellers" in Section 4 of the MIPA:

- That each of RedGear's Financial Statements were accurate, correct and complete, based upon and consistent with information contained in the books and records of the Company (which books and records were in turn accurate, correct and complete) and fairly presented the financial condition and results of operations of RedGear. (Ex. A at Section 4(d)).

- That since the Balance Sheet Date, RedGear had not entered into, modified or terminated, or agreed or promised to enter into, modify or terminate, any employment or consulting agreement, or otherwise increased (or agreed or promised to increase), or made (or agreed to or promised to make), any other change to the compensation and terms of employment and/or service (including with respect to salary, wage rate, bonus, sales commission, award, grant, benefits, employment status, title, and equity-based or equity-linked compensation) payable or to become payable to any managers, member-managers, officers, employees, consultants or independent contractors of the Company in excess of $15,000 individually or in excess of $50,000 in the aggregate. (Ex. A at Section 4(e)(v)).

- That since the Balance Sheet Date, RedGear had not failed to promptly pay and discharge current liabilities. (Ex. A at Section 4(e)(vi)).

- That no undisclosed Liabilities existed, whether arising out of any transactions entered into, or any action or inaction, or any state of facts existing at or prior to the Closing Date or otherwise. (Ex. A at Section 4(f)).

- That RedGear was not bound by any undisclosed contract for the employment of any person on a consulting basis or as an independent contractor and that RedGear did not have undisclosed independent contractors. (Ex. A at Section 4(l)(i)(A); Section 4(o)).

- That RedGear was not bound by any undisclosed contract involving a future potential Liability or receivable in excess of $20,000 on an annual basis or in excess of $50,000 over the Contract term. (Ex. A at Section 4(l)(i)(N)).

- That RedGear was not bound by any undisclosed contract that is material to the Business, taken as a whole. (Ex. A at Section 4(l)(i)(N)).

- That RedGear had complied and was in compliance in all material respects with all laws, rules and regulations applicable to it, including but not limited to employment-related laws. (Ex. A at Section 4(g)(i)).

- That RedGear's properties and assets were in operable condition and repair in all material respects and were useable in the ordinary course of business. (Ex. A at Section 4(h)(i)).

53. Aguayo knew or believed that each of the representations or omissions were false or made the representations with a reckless indifference to the truth.

54. Aguayo intended to induce ReachOut to act or refrain from acting.

55. ReachOut acted in justifiable reliance on the representations or omissions.

56. ReachOut was injured by its reliance, including by paying more for RedGear than it otherwise would have.

## COUNT II
### Fraudulent Inducement Against Defendant Aguayo

57. ReachOut realleges and incorporates the allegations contained in Paragraphs 1 through 50 as if set forth herein, and further alleges:

58. Aguayo made false statements or misrepresentations, including but not limited to the following "Representations and Warranties of Sellers" in Section 4 of the MIPA:

- That each of RedGear's Financial Statements were accurate, correct and complete, based upon and consistent with information contained in the books and records of the Company (which books and records were in turn accurate, correct and complete) and fairly presented the financial condition and results of operations of RedGear. (Ex. A at Section 4(d)).

- That since the Balance Sheet Date, RedGear had not entered into, modified or terminated, or agreed or promised to enter into, modify or terminate, any employment or consulting agreement, or otherwise increased (or agreed or promised to increase), or made (or agreed to or promised to make), any other change to the compensation and terms of employment and/or service (including with respect to salary, wage rate, bonus, sales commission, award, grant, benefits, employment status, title, and equity-based or equity-linked compensation) payable or to become payable to any managers, member-managers, officers, employees, consultants or independent contractors of the Company in excess of $15,000 individually or in excess of $50,000 in the aggregate. (Ex. A at Section 4(e)(v)).

- That since the Balance Sheet Date, RedGear had not failed to promptly pay and discharge current liabilities. (Ex. A at Section 4(e)(vi)).

- That no undisclosed Liabilities existed, whether arising out of any transactions entered into, or any action or inaction, or any state of facts existing at or prior to the Closing Date or otherwise. (Ex. A at Section 4(f)).

- That RedGear was not bound by any undisclosed contract for the employment of any person on a consulting basis or as an independent contractor and that RedGear did not have undisclosed independent contractors. (Ex. A at Section 4(l)(i)(A); Section 4(o)).

- That RedGear was not bound by any undisclosed contract involving a future potential Liability or receivable in excess of $20,000 on an annual basis or in excess of $50,000 over the Contract term. (Ex. A at Section 4(l)(i)(N)).

- That RedGear was not bound by any undisclosed contract that is material to the Business, taken as a whole. (Ex. A at Section 4(l)(i)(N)).

- That RedGear had complied and was in compliance in all material respects with all laws, rules and regulations applicable to it, including but not limited to employment-related laws. (Ex. A at Section 4(g)(i)).

- That RedGear's properties and assets were in operable condition and repair in all material respects and were useable in the ordinary course of business. (Ex. A at Section 4(h)(i)).

59. Aguayo knew or believed that each of the false statements or misrepresentations were false or made the representations with a reckless indifference to the truth.

60. Aguayo's false statements or misrepresentations induced ReachOut to enter into the MIPA and the Note.

61. ReachOut's reliance on Aguayo's false statements or misrepresentations was reasonable.

62. ReachOut was injured as a result of its reliance, including by paying more for RedGear than it otherwise would have.

## COUNT III
### Tortious Interference with Prospective Business Relations Against Defendant Aguayo

63. ReachOut realleges and incorporates the allegations contained in Paragraphs 1 through 50 as if set forth herein, and further alleges:

64. A reasonable probability of a business opportunity existed between ReachOut and the Consulting Client.

65. Aguayo intentionally interfered with the business opportunity that existed between ReachOut and the Consulting Client.

66. Aguayo's interference proximately caused ReachOut to be damaged.

## COUNT IV
### Breach of Fiduciary Duty Against Defendant Aguayo

67. ReachOut realleges and incorporates the allegations contained in Paragraphs 1 through 50 as if set forth herein, and further alleges:

68. Aguayo is an employee and the Director of Business & Growth of a wholly-owned subsidiary (the "Subsidiary") of ReachOut.

69. As an employee and Director of ReachOut's Subsidiary, Aguayo is an agent of ReachOut.

70. As such, Aguayo owes fiduciary duties to ReachOut, including the duty of loyalty.

71. Aguayo breached the fiduciary duties he owes to ReachOut as specified above.

72. ReachOut has been damaged as a result of Aguayo's breach.

## COUNT V
### Conversion of 2022 Toyota 4Runner Against Defendant Aguayo

73. ReachOut realleges and incorporates the allegations contained in Paragraphs 1 through 50 as if set forth herein, and further alleges:

74. ReachOut has a property interest in a 2022 Toyota 4Runner.

75. ReachOut is paying a loan for the 2022 Toyota 4Runner and has the right to possession of the 2022 Toyota 4Runner.

76. Aguayo wrongfully possessed or disposed of the 2022 Toyota 4Runner as if it were his own.

77. ReachOut sustained damages as a result.

## COUNT VI
### Conversion of Consulting Client Proceeds Against Defendant Aguayo

78. ReachOut realleges and incorporates the allegations contained in Paragraphs 1 through 50 as if set forth herein, and further alleges:

79. ReachOut has a property interest in proceeds Aguayo has received from the Consulting Client (the "Proceeds"), which includes known proceeds of over $7,000 per month and which is earned using ReachOut resources and a ReachOut employee.

80. ReachOut has a right to possession of the Proceeds.

81. Aguayo wrongfully possessed or disposed the Proceeds as if they were his own.

82. ReachOut sustained damages as a result.

## COUNT VII
### Declaratory Judgment on Promissory Note Against Defendants Aguayo and Gonzalez

83. ReachOut realleges and incorporates the allegations contained in Paragraphs 1 through 50 as if set forth herein, and further alleges:

84. ReachOut seeks a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201, to establish that it is not in default under the Note.

85. An actual, justiciable controversy exists involving the parties' respective rights and obligations under the Note.

86. Section 2(b) of the Note provides that ReachOut "shall repay the Principal Amount (plus interest accrued thereon) quarterly in equal installments. The first such payment shall occur on the 15th day of the month that is 6 months following the date hereof."

87. However, Section 7(b)(viii) of the MIPA, for which the Note was part of the consideration, provides that "[ReachOut] shall have the right to recover, and to set-off and apply against all amounts otherwise due and owing to Sellers, or any of them, all sums in respect of which they may be liable to [ReachOut], including but not limited to, as a result of a breach of any representation or warranty of Sellers contained in Section 4…"

88. Aguayo and Gonzalez knowingly and deliberately made false representations and warranties in the MIPA as described earlier in this Complaint. ReachOut is still calculating the full amount it is owed as a result of these deliberately false representations and warranties, but the amount is significantly in excess of the approximately $73,000 amount of the first quarterly payment under the Note. Accordingly, ReachOut properly withheld payment pursuant to section 7(b)(viii) of the MIPA.

89. Aguayo and Gonzalez have previously asserted that ReachOut is in default under the Note and that the entire amount of the Note is immediately due.

90. For the reasons stated in this Count VII, ReachOut is entitled to a declaratory judgment that it is not in default under the Note and that the full amount of the Note is not immediately due and payable because it properly set-off amounts owed to it pursuant to section 7(b)(viii) of the MIPA.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, ReachOut Technology Corp., respectfully request the following relief from the Court:

1. The Court award damages against Luciano Aguayo in an amount to be determined at trial;

2. The Court order disgorgement of any and all monies misappropriated by Luciano Aguayo from ReachOut, including any and all sums made using ReachOut employees or resources;

3. For a declaration that ReachOut is not in default under the Note and that the full amount of the Note is not immediately due and payable because ReachOut properly set-off amounts owed to it pursuant to section 7(b)(viii) of the MIPA;

4. That the costs of this action be taxed against Defendant, Luciano Aguayo; and

5. For such other and further relief as the Court may deem just and proper.

Dated: April 26, 2024.

Respectfully submitted,

**NELSON MULLINS RILEY & SCARBOROUGH, LLP**

By: */s/Matthew E. Nirider*

Matthew E. Nirider
123 N. Wacker Drive, Suite 2100
Chicago, Illinois 60606
Telephone: 312.376.1009
matt.nirder@nelsonmullins.com

*Attorneys for Plaintiff, ReachOut Technology Corp.*