# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| REACHOUT TECHNOLOGY CORP., a Delaware corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: 1:24-CV-03408 |
| LUCIANO AGUAYO, an individual, and ARMANDO GONZALEZ, an individual. | ) ) ) ) | Hon. Robert W. Gettleman |
| Defendants | ) ) | |
| LUCIANO AGUAYO and ARMANDO GONZALEZ, | ) ) ) | |
| Counter-Plaintiffs, | ) ) | |
| v. | ) ) | |
| REACHOUT TECHNOLOGY CORP., a Delaware corporation | ) ) ) | |
| Counter-Defendant. | ) ) | |
| LUCIANO AGUAYO and ARMANDO CONZALEZ | ) ) ) | |
| Third-Party Plaintiffs, | ) ) | |
| v. | ) ) | |
| Innovative Network Designs, LLC, a New Jersey limited liability company d/b/a ReachOut, a New Jersey limited liability company; RICK JORDAN, an individual, and BRODERICK ABBOTT, an individual | ) ) ) ) ) ) ) | |
| Third-Party Defendants | ) ) | |

## RICK JORDAN ANSWER TO AMENDED THIRD PARTY COMPLAINT

Third Party Defendant Rick Jordan hereby Answers the relevant sections of the Third Party Complaint as follows:

## JURISDICTION AND VENUE

1.      Federal jurisdiction is based on 28 U.S.C. § 1332 as the amount in controversy exceeds $75,000.00 exclusive of interest and costs and is between citizens of different states.

**ANSWER:**      Admit that this purports to be such an action and that federal jurisdiction exists, but deny that Third Party Plaintiffs are entitled to any relief.

2.      Venue is proper in the Northern District of Illinois because the events described herein occurred in this judicial district and the promissory note in question identifies this judicial district as a proper venue.

**ANSWER:**      Admit that venue is proper.  Otherwise denied.

## PARTIES

3.      ReachOut Technology Corp. (ōReachOutö) is a Delaware corporation, with its principal place of business in Frankfort, Illinois.

**ANSWER:**      Admit that ReachOut was a Delaware corporation as of March 31, 2025. Denied that its principal place of business was Frankfort, Illinois. Otherwise denied for lack of knowledge.

4.      Rick Jordan resides in and is a citizen of Illinois. At all relevant times he was the CEO of ReachOut.

**ANSWER:**      Admit that Rick Jordan resides in and is a citizen of Illinois, and that he was

2

CEO of ReachOut until March 31, 2025; otherwise denied.

5.      Broderick Abbott resides in and is a citizen of Illinois. At all relevant times he was the Project Manager of ReachOut.

**ANSWER:**      Admit that Abbott was Project Manager of ReachOut until July 23, 2024. Otherwise denied for lack of knowledge.

6.      Innovative Network Designs, LLC, d/b/a ReachOut, is a New Jersey Limited Liability Company, on information and belief, has its principal place of business in Whippany, New Jersey, and does business in Texas.

**ANSWER:**      Admit that Innovative Network Designs, LLC, d/b/a ReachOut was a New Jersey Limited Liability Company with its principal place of business in Whippany, New Jersey, and did business in Texas until March 31, 2025. Otherwise denied for lack of knowledge.

7.      Armando Gonzalez resides in and is a citizen of Texas.

**ANSWER:**      Denied for lack of knowledge.

8.      Luciano Aguayo resides in and is a citizen of Texas.

**ANSWER:**      Denied for lack of knowledge.

## FACTS COMMON TO ALL COUNTS

### Sale of RedGear

9.      Luciano Aguayo and Armando Gonzalez were the owners of RedGear, LLC, a Texas limited liability company ("RedGear").

**ANSWER:**      Admit.

10.      In August 2023 Luciano Aguayo and Armando Gonzalez entered into negotiations with ReachOut to sell RedGear. The negotiations were with Rick Jordan as CEO of ReachOut.

**ANSWER:**        Admit that ReachOut's negotiations to buy RedGear were with Rick Jordan as CEO of ReachOut; otherwise denied.

11.        On or about August 11, 2023, the parties entered into a letter of intent to sell RedGear to ReachOut.

**ANSWER:**        Admit that on or about August 11, 2023, ReachOut entered into a letter of intent to sell RedGear to ReachOut. Deny that Jordan entered into any agreement.

12.        During the due diligence period, the parties exchanged financial records and other documentation.

**ANSWER:**        Admit that during the due diligence period, Third Party Plaintiffs provided purported financial information on RedGear to Reachout.  Deny that ReachOut or Jordan provided any financial records to Third Party Plaintiffs or RedGear.

13.        As part of the exchange of documentation, Rick Jordan represented that ReachOut was financially sound and had the capability to honor and pay any agreements entered into, including any promissory notes.

**ANSWER:**        Denied.  Further state that ReachOut - as the buyer - did not warrant or provide any financial information.  The Membership Interest Purchase Agreement ("MIPA") paragraph 6 contains the entire warranties and representations made by ReachOut and no other information is a part of the Agreement pursuant to the merger clause in paragraph 11(b) of the MIPA which reads "This Agreement and the other Transaction Documents constitute the entire agreement among the Parties and supercedes any prior understandings, Contracts or representations by or among the Parties, written or oral, that may have related in any way to the subject matter hereof."

14.        On September 29, 2023, Luciano Aguayo and Armando Gonzalez entered into a

Membership Interest Purchase Agreement ("Agreement") to sell RedGear to ReachOut. (A copy of the Agreement is attached hereto as Exhibit A).

**ANSWER:**        Admit.

15.        As part of taking over all membership interests in RedGear, ReachOut was to serve and take over the accounts of the former clients of RedGear. This included transferring any guarantees for any accounts from Luciano Aguayo and Armando Gonzalez to ReachOut, and otherwise taking over financial responsibility for any customer accounts.

**ANSWER:**        The Agreement speaks for itself.  Denied to the extent the allegations are inconsistent with the provisions of the Agreement.

16.        The Agreement was signed by Rick Jordan, CEO of ReachOut.

**ANSWER:**        Admit that the Agreement was signed by Rick Jordan in his capacity as CEA of ReachOut and not in his individual capacity. To the extent there is any suggestion that Jordan signed the Agreement personally, denied.

17.        The purchase price of the Agreement was to be paid in a cash payment in the amount of $1,249,248.00 with the balance paid pursuant to a promissory note.

**ANSWER:**        The Agreement speaks for itself.  Denied to the extent the allegations are inconsistent with the provisions of the Agreement.

18.        ReachOut signed the Promissory Note dated September 29, 2023 ("Note"). (A copy of the Note is attached hereto as Exhibit B).

**ANSWER:**        Admit.

19.        The principal sum of the Note was $1,314,787.00, but the principal amount owed would be adjusted upwards or downwards in accordance with certain EBITDA performance metrics. (Ex. B, 1(a)-(c))

**ANSWER:** The Agreement and Note speak for itself. Denied to the extent the allegations are inconsistent with the provisions of the Agreement.

20. The financial records and calculations related to EBITDA were controlled by Mr. Jordan. Mr. Jordan had a duty to present accurate financial records in order to property calculate the principal balance under the Note.

**ANSWER:** Denied. Third Party Plaintiffs provided RedGear's relevant financial records directly to the accounting firm prior to the closing of the MIPA transaction; at a time when Third Party Plaintiffs had exclusive control of RedGear's financial records. The RedGear financial records provided to the Independent Accounting Firm included its bank statements, credit card statements, and direct access to RedGear's QuickBooks account. That information was submitted directly to the accounting firm by the Third Party Plaintiffs and/or their representative IT Valuations. Rick Jordan had no control over the RedGear financial records used for the Adjusted EBITDA calculation as they were provided directly to the accounting firm by the Third Party Plaintiffs and/or their representative IT Valuations. Further denied that Rick Jordan owed any contractual duty under the Note to provide or certify such data.

21. While the Note allowed an accounting firm to calculate EBITDA, if the accounting firm was given falsified financial records, their calculations would be worthless.

**ANSWER:** Denied. Third Party Plaintiffs provided RedGear's relevant financial records directly to the accounting firm prior to the closing of the MIPA transaction; at a time when Third Party Plaintiffs had exclusive control of RedGear's financial records. The RedGear financial records provided to the Independent Accounting Firm included its bank statements, credit card statements, and direct access to RedGear's QuickBooks account. That information was submitted directly to the accounting firm by the Third Party Plaintiffs and/or their representative IT

Valuations. Rick Jordan had no control over the RedGear financial records used for the Adjusted EBITDA calculation as they were provided directly to the accounting firm by the Third Party Plaintiffs and/or their representative IT Valuations. Further denied that Rick Jordan owed any contractual duty under the Note to provide or certify such data.

22.     The Agreement included non-solicitation and non-compete clauses, with certain customers being carved out from those terms. The non-compete did not apply to Franklin Mountain Investments or Envision Health Care. (Ex. A, Section 8(g)(i))

**ANSWER:**     The Agreement speaks for itself.  Denied to the extent the allegations are inconsistent with the provisions of the Agreement.

23.     If ReachOut did not pay any of the amounts due under the Note, the non- compete  and non-solicitation agreements õbecome immediately null and void and unenforceable by [ReachOut] the [RedGear] and any of their respective Affiliates without the requirement of any notice from, or further action of [Luciano Aguayo and Armando Gonzalez].ö (Ex. A, Section 8(g)(iv))

ANSWER:     The Agreement speaks for itself.  Denied to the extent the allegations are inconsistent with the provisions of the Agreement.

24.     The first payment under the Note was due on March 15, 2024. (Ex. B, 2(b))

**ANSWER:**     Denied.

25.     No payment was made on or before March 15, 2024.

**ANSWER:**     Denied.

26.     A written notice of default was tendered to ReachOut with a 10-day right to cure on or about March 25, 2024.

**ANSWER:**     Admit that a notice was tendered to ReachOut, deny that ReachOut was in

default.

27.     Rick Jordan and ReachOut responded in writing on or about March 28, 2024. ReachOut admitted it owed money under the Note, but disputed the amount owed.

**ANSWER:**     Admit that ReachOut's counsel responded in writing on behalf of ReachOut. Deny that Rick Jordan responded on his own personal behalf and deny the remaining allegations.

28.              On March 28, 2024, ReachOut stated it õaffirms its commitment to make the first quarterly payments on April 15, 2024.ö ReachOut never made a payment as promised on April 15, 2024.

**ANSWER:**     Denied.

29.     A second quarterly payment was due on June 15, 2024 pursuant to the Note.  No payment was made on or before June 15, 2024.

**ANSWER:**     Denied.

30.     The Note provided that adjustments would be made if there were adjustments in EBITA. Accordingly, any payments that exceeded or were less than actual EBITA would be adjusted at a later date. Knowing that it had a right to adjust any payments at a later date, ReachOut has still refused to make any payments under the Note.

**ANSWER:**     Denied.

31.     No payment was made after any written notices, and no payment has been made to date.

**ANSWER:**     Admit that no payment was made by ReachOut after any written notice, otherwise denied.

<b>Subsequent Discovery of Fraud</b>

32.     After completing the sale and entering into the Employment Agreements, it became apparent that Rick Jordan lied about the financial condition of ReachOut when negotiating the

8

purchase price of the Agreement.

**ANSWER:** Denied. Further state that ReachOut - as the buyer ó did not warrant or provide any financial information. The Membership Interest Purchase Agreement ("MIPA") paragraph 6 contains the entire warranties and representations made by ReachOut and no other information is a part of the Agreement pursuant to the merger clause in paragraph 11(b) of the MIPA which reads õThis Agreement and the other Transaction Documents constitute the entire agreement among the Parties and supercedes any prior understandings, Contracts or representations by or among the Parties, written or oral, that may have related in any way to the subject matter hereof.ö

33. After the sale, Luciano Aguayo and Armando Gonzalez discovered that ReachOut was in financial distress and failed to pay vendors invoices, credit cards and loans.

**ANSWER:** Denied.

34. Luciano Aguayo and Armando Gonzalez discovered that Rick Jordan and ReachOut falsified financial information, falsified financial statements, and purposely misstated the financial results of the company to Luciano Aguayo and Armando Gonzalez, to lenders, and to third parties.

**ANSWER:** Deny.

35. Luciano Aguayo and Armando Gonzalez discovered that ReachOut defaulted on a number of loans and agreements and breached promissory note payments related to other companies acquired by Rick Jordan and ReachOut.

**ANSWER:** Deny.

36. Rick Jordan directed ReachOut to alter the financial statements and continually instructed officers to not pay vendors and other payables.

9

**ANSWER:** Deny.

37. ReachOut officers were directed to default on the Note to renegotiate the loan with Luciano Aguayo and Armando Gonzalez. A ReachOut officer confirmed "Rick Jordan purposely defaulted on RedGear's note and retaliated against Luciano Aguayo's demand of payment by filing [this lawsuit]."

**ANSWER:** Deny.

38. ReachOut officers were "asked by Rick Jordan to skip loan payments due to lack of funds and growing financial difficulties."

**ANSWER:** Deny.

39. ReachOut officers were directed to falsify financial records, fraudulently inflate receivables, and misstate purchase orders to alter financial data.

**ANSWER:** Deny.

40. The financial misrepresentation was done in a scheme to reduce the EBITA calculations under the Note or other loans when it suited Rick Jordan and ReachOut, and done to increase financial performance when seeking loans from third-party lenders.

**ANSWER:** Deny.

<strong>Employment Agreements</strong>

41. As part of the Agreement, Luciano Aguayo and Armando Gonzalez entered into employment agreements with Innovative Network Designs, LLC. (A copy of the employment agreements are attached hereto as Exhibit C (collectively, "Employment Agreements")).

**ANSWER:** Admit.

42. The terms of the Employment Agreements were for twelve months.

**ANSWER:** Admit.

43.          The Employment Agreements provided a base compensation to Luciano Aguayo and Armando Gonzalez as follows:

> 4.1          Compensation and Related Matters. Base Wage. In consideration for services rendered to the Company as provided herein, the Company will pay Employee during the Term (i) a salary of $125,000, payable in accordance with the Company's standard payroll practices in effect from time to time (the "Base Wage"); and
>
>> (ii) pursuant to the Buyer's (or its successor's) stock option plan, within 15 days of Buyer's effective listing on the OTC Markets, Buyer (or its successor) shall issue in favor of Employee restricted stock options entitling Employee to non-voting shares of Buyer's (or its successor's) common stock valued at $305,607 (the "Options"). The Options will vest in equal monthly installments over a period of 12 months and, once vested, be exercisable via cashless exercise until the tenth anniversary of the date hereof. The Options will entitle Employee to purchase 305,607 shares at a strike price of $1 per Option; provided, however, the Options will contain a cashless exercise feature pursuant to Buyer's (or its successor's) stock option plan. The Base Wage may be increased or decreased from time to time in accordance with normal business practices of the Company. The Company does not commit to any specific levels of compensation, consideration, bonus, incentives, or otherwise, except as described in Section 5.

(Ex. C.)

**ANSWER:**          Admit.

44.     The Employment Agreements further provided a bonus plan to Luciano Aguayo and Armando Gonzalez as follows:

> 4.2. Bonus. Subject to achievement of the metrics set forth on Exhibit A, the Employee may be entitled to a bonus of up to
> $200,000 (the "Bonus"), payable 50% in cash and 50% as non- voting shares of the Company's restricted common stock issued pursuant to the Company's stock option plan. The Bonus shall be calculated by the Company upon the expiration of the Term based on and subject to the achievement of the metrics set forth on Exhibit
> A. If applicable, the Company shall pay Employee the Bonus no later than thirty (30) days following the expiration of the Term; provided, the Employee must not have given notice of Employee's intention to resign or been terminated for "Cause," as defined in Section 5, prior to the date of payment of such Bonus, failing which the Bonus will be forfeited in its entirety.

11

(Ex.C)

**ANSWER:** Admit.

45. The Employment Agreements provided that Luciano Aguayo and Armando Gonzalez could not be terminated during the initial twelve months of employment, except ŏfor causeö as defined in Article 5 of the Employment Agreement.

**ANSWER:** Admit.

46. The Employment Agreements incentivized Luciano Aguayo and Armando Gonzalez to bring clients into RedGear and ReachOut, assist ReachOut improve its financial results, and to assist with the transition of RedGear from Luciano Aguayo and Armando Gonzalez to ReachOut.

**ANSWER:** Admit.

47. Immediately after closing on the sale of RedGear, Luciano Aguayo and Armando Gonzalez began their employment with Innovative.

**ANSWER:** Admit.

48. Immediately after closing on the sale of RedGear, Rick Jordan, Innovative and ReachOut began to sabotage the efforts of Luciano Aguayo and Armando Gonzalez to serve RedGear and ReachOut customers.

**ANSWER:** Deny.

49. The failure of ReachOut to pay its debts and its vendors prevented Luciano Aguayo and Armando Gonzalez from growing the Southwest business.

**ANSWER:** Deny.

50. Requests for payment of invoices and lines of credit were denied by Rick

12

Jordan which prevented Luciano Aguayo and Armando Gonzalez from servicing client accounts.

**ANSWER:**      Deny.

51.     Requests for new sales representatives by Luciano Aguayo and Armando Gonzalez were denied by Rick Jordan, Innovative and ReachOut.

**ANSWER:**      Admit.

52.     Rick Jordan and ReachOut started to treat the former RedGear technicians in El Paso and Phoenix differently than the technicians of ReachOut in Illinois, including providing different commission and bonus structures. This led to employment disputes and created a hostile workplace.

**ANSWER:**      Deny.

53.     ReachOut defaulted on rent, and certain offices remained unoccupied, affecting the ability to serve local clients.

**ANSWER:**      Deny.

54.     Rick Jordan and Innovative/ReachOut denied access to flights and expenses necessary to service ReachOut and RedGear clients.

**ANSWER:**      Deny.

55.     Rick Jordan instructed Innovative/ReachOut staff not to talk to Luciano Aguayo or assist him with his duties.

ANSWER:      Admit that some individuals were instructed not to talk to Aguayo about certain subjects while Aguayo was under investigation for wrongdoing; otherwise denied.

56.     Emails of Luciano Aguayo and Armando Gonzalez were ignored by Rick Jordan and key officers of ReachOut.

**ANSWER:**      Deny.

57.        Luciano Aguayo and Armando Gonzalez were not allowed to pursue new business on behalf of ReachOut because account payables were not paid.

**ANSWER:**        Deny.

58.    The financial distress of ReachOut, the fraud of Rick Jordan, and the constant frustration of attempts to serve clients prevented Luciano Aguayo and Armando Gonzalez from performing their duties under the Employment Agreement.

**ANSWER:**        Deny.

**Retaliation for Demanding Payment Under the Note**

59.    Immediately after the March 25, 2024 default notice regarding the Note, Rick Jordan, ReachOut, and Innovative began to take steps to terminate the employment of Luciano Aguayo and Armando Gonzalez.

**ANSWER:**        Deny.

60.    On April 30, 2024, Luciano Aguayo was terminated from his employment with Innovative.

**ANSWER:**        Admit.

61.    Luciano Aguayo was terminated in retaliation for demanding payment under the Note that was in default.

**ANSWER:**        Deny.

62.        On May 30, 2024, Armando Gonzalez was constructively discharged from his employment with Innovative.

**ANSWER:**        Deny.

63.        Armando Gonzalez was retaliated against for demanding payment under the Note that was in default.

**ANSWER:**    Deny.

### Defamation of Luciano Aguayo

64.    On May 1, 2024, Rick Jordan called a company-wide meeting.

**ANSWER:**    Admit.

65.    The purpose of the meeting was to maliciously circulate false statements about Luciano Aguayo and attack his reputation.

**ANSWER:**    Deny.

66.    Rick Jordan represented that "Luciano Aguayo was terminated with cause from the Company."

**ANSWER:**    Admit subject to what the actual record will show.

67.    Rick Jordan further stated: "Around Mid-February, we were made aware of a client of ReachOut that was being provided full services and we had never billed them at least since we acquired RedGear."

**ANSWER:**    Admit subject to what the actual record will show.

68.    Rick Jordan stated: "Luciano Aguayo has been billing this customer for direct competing services to ReachOut. It even has gone as far as assigning a technician, an embedded technician, one of our own people, in this customer, day in and day out, all on our own dime, while he pocketed the money."

**ANSWER:**    Admit. subject to what the actual record will show.

69.    Rick Jordan falsely accused Luciano Aguayo of being a "thief" and stated " this is somebody that appears to have been stealing from the company for a very long time."

**ANSWER:**    Admit the quote at the end of this paragraph subject to what the actual record will show and deny all other allegations in paragraph 69.

15

70.     Rick Jordan accused Luciano Aguayo of "Misappropriation of Company resources both of employees and technology."

**ANSWER:**         Admit subject to what the actual record will show.

71.     During the meeting it was published that the employees were not being paid because Luciano Aguayo diverted money and that "There are other areas outside of just taking the money, not putting it into the company, not putting into your pockets, there are a bunch of these things are aren't even included."

**ANSWER:**         Deny.

72.      The statements made by Rick Jordan were false and defamatory.

**ANSWER:**         Deny.

73.      To further attack Luciano Aguayo's reputation, ReachOut/Innovative attacked his daughter.

**ANSWER:**         Deny

74.     After the meeting, Luciano Aguayo's daughter, a low-level administrative employee, was threatened with armed guards brought in by Rick Jordan. She was prevented from going to the washroom with her phone by a female armed guard.

**ANSWER:**         Deny.

75.     Luciano Aguayo's daughter was then confronted by Broderick Abbott in a conference room.

**ANSWER:**         Without knowledge.

76.     During the meeting, Broderick Abbott stated that Luciano Aguayo was a "thief," he had been stealing from the company, and that it was explaining to her "what kind of man her father is."

**ANSWER:**　　　Without knowledge.

77.　　Broderick Abbott falsely accused Luciano Aguayo of stealing from the company and falsely accused him of misconduct.

**ANSWER:**　　　Without knowledge.

78.　　Broderick Abbott confronted the young woman against her will for sole purpose of defaming her father.

**ANSWER:**　　　Without knowledge.


　　　Counts I-III and VI-IX, paragraphs 79-109 and 126-159, do not purport to state claims against Rick Jordan so no response is required by him. To the extent any of those counts or paragraphs are deemed to be directed to Rick Jordan, they are denied.


## COUNT IV – FRAUD, MISREPRESENTATION AND DECEIT
### (Luciano Aguayo and Armando Gonzalez against Rick Jordan)

110.　Luciano Aguayo and Armando Gonzalez reallege and incorporate by reference paragraphs 1-63.

**ANSWER:**　　Rick Jordan reincorporates his answers to paragraphs 1-63 as though stated herein.

111.　Rick Jordan had a duty not to engage in fraud, intentional misrepresentation and deceit in his dealings with Luciano Aguayo and Armando Gonzalez.

**ANSWER:**　　　Deny any implication that Jordan engaged in fraud, intentional misrepresentation or deceit.

112.　Prior to signing the Agreement, and during the due diligence period for the sale of

RedGear, Rick Jordan misrepresented to Luciano Aguayo and Armando Gonzalez the financial condition of ReachOut.

ANSWER:      Denied.    Further state that ReachOut - as the buyer – did not warrant or provide any financial information.  The Membership Interest Purchase Agreement ("MIPA") paragraph 6 contains the entire warranties and representations made by ReachOut and no other information is a part of the Agreement pursuant to the merger clause in paragraph 11(b) of the MIPA which reads "This Agreement and the other Transaction Documents constitute the entire agreement among the Parties and supercedes any prior understandings, Contracts or representations by or among the Parties, written or oral, that may have related in any way to the subject matter hereof."

113.   Prior to signing the Agreement, Rick Jordan withheld information that:

    A.    ReachOut was in default in a number of agreements;

    B.    ReachOut was in breach of promissory notes related to the acquisition of other companies;

    C.    ReachOut was in default on a number of vendor agreements and accounts payable;

    D.    the financial statements tendered were false and fraudulent; and,

    E.    Rick Jordan and ReachOut did not have the financial means to pay the Note.

**ANSWER:**      Denied.    Further state that ReachOut - as the buyer – did not warrant or provide any financial information.  The Membership Interest Purchase Agreement ("MIPA") paragraph 6 contains the entire warranties and representations made by ReachOut and no other

18

information is a part of the Agreement pursuant to the merger clause in paragraph 11(b) of the MIPA which reads öThis Agreement and the other Transaction Documents constitute the entire agreement among the Parties and supercedes any prior understandings, Contracts or representations by or among the Parties, written or oral, that may have related in any way to the subject matter hereof.ö Also specifically deny that Rick Jordan had any personal obligation to pay the Note.

114.   After the closing of the sale of RedGear, Rick Jordan engaged in fraud in attempt to prevent the payment of the Note and Employment Agreements to Luciano Aguayo and Armando Gonzalez.

**ANSWER:**        Deny.

115.   Rick Jordan directed ReachOut to alter the financial statements and continually instructed officers to not pay vendors and other payables.

**ANSWER:**        Deny.

116.   Rick Jordan fraudulently altered the financial statements of ReachOut, misrepresented the EBITA of ReachOut, and submitted fraudulently altered financial statements and documents to Luciano Aguayo and Armando Gonzlez.

**ANSWER:**        Deny.

117.   The Controller of ReachOut admitted that Rick Jordan fraudulently altered the financial statements and records of ReachOut to prevent payment under the Note.

**ANSWER:**        Deny. Further state that the Note principal was adjusted downward pursuant to the express terms of the Agreement and Note, based on an independent EBITDA calculation performed by Pivot Business Group, a third-party firm jointly engaged by both Buyer and Sellers. The RedGear data used in that calculation was provided directly and exclusively by

Aguayo, Gonzalez, and their representative IT Valuations, prior to the closing of the transaction; at a time when ReachOut had no direct access to or control over any of the financial information of RedGear.

118.   Rick Jordan had a duty to not submit fraudulently altered records and to not misrepresent the condition of ReachOut prior to entering into the Agreement.

**ANSWER:**      Deny that Rick Jordan submitted fraudulently altered records or misrepresented the condition of ReachOut prior to ReachOut entering into the Agreement. Further state that ReachOut - as the buyer – did not warrant or provide any financial information. The Membership Interest Purchase Agreement ("MIPA") paragraph 6 contains the entire warranties and representations made by ReachOut and no other information is a part of the Agreement pursuant to the merger clause in paragraph 11(b) of the MIPA which reads "This Agreement and the other Transaction Documents constitute the entire agreement among the Parties and supercedes any prior understandings, Contracts or representations by or among the Parties, written or oral, that may have related in any way to the subject matter hereof."

119.            The financial records and calculations related to EBITDA were controlled by Rick Jordan. Rick Jordan has duty to submit truthful and accurate financial records and statements because the calculations of the principal owed under the Note were based on the records. Without accurate financial records, there would not be accurate principal calculations.

**ANSWER:**      Deny. Further state that the Note principal was adjusted downward pursuant to the express terms of the Agreement and Note, based on an independent EBITDA calculation performed by Pivot Business Group, a third-party firm jointly engaged by both Buyer and Sellers. The RedGear data used in that calculation was provided directly and exclusively by Aguayo, Gonzalez, and their representative IT Valuations prior to the closing of the transaction

at a time when ReachOut had no direct access to or control over the financial information of RedGear.

120.   As a result of Rick Jordan's misrepresentations and fraud, Luciano Aguayo and Armando Gonzalez have been damaged.

**ANSWER:**      Deny.

121.   The conduct of Rick Jordan constitutes fraud as the conduct involves statements of fact that Rick Jordan knew were false and untrue.

**ANSWER:**      Deny.

122.   Rick Jordan made false misrepresentations, failed to disclose material facts, and fraudulently altered the financial records of ReachOut knowing Luciano Aguayo and Armando Gonzalez would rely on those fraudulent actions.

 **ANSWER:**       Deny. Further state that the Note principal was adjusted downward pursuant to the express terms of the Agreement and Note, based on an independent EBITDA calculation performed by Pivot Business Group, a third-party firm jointly engaged by both Buyer and Sellers. The RedGear data used in that calculation was provided directly and exclusively by Aguayo, Gonzalez, and their representative IT Valuations prior to the closing of the transaction at a time when ReachOut had no direct access to or control over the financial information of RedGear.

123.   Luciano Aguayo and Armando Gonzalez did in fact rely on Rick Jordan's misrepresentations and fraudulent conduct.

**ANSWER:**       Deny.   Further state that ReachOut - as the buyer – did not warrant or provide any financial information.  The Membership Interest Purchase Agreement ("MIPA") paragraph 6 contains the entire warranties and representations made by ReachOut and no other information is

a part of the Agreement pursuant to the merger clause in paragraph 11(b) of the MIPA which reads "This Agreement and the other Transaction Documents constitute the entire agreement among the Parties and supercedes any prior understandings, Contracts or representations by or among the Parties, written or oral, that may have related in any way to the subject matter hereof."

124.   The conduct of Rick Jordan was intentional and in reckless disregard of the rights of Luciano Aguayo and Armando Gonzalez.

**ANSWER:**      Deny.

125.  Rick Jordan's conduct was willful and wanton.

**ANSWER:**      Deny.

WHEREFORE, Third-Party Defendant requests judgment in his favor on the allegations and specifically denies that Third Party Plaintiffs have any right to recover attorney's fees, and prays that this matter be dismissed and that he be permitted to recover his costs.

## <u>COUNT V – DEFAMATION PER SE</u>
**(Luciano Aguayo against Rick Jordan, Broderick Abbott)**

126.   Luciano Aguayo realleges and incorporates by reference paragraphs 1-15 and paragraphs 56-75.

**ANSWER:** Rick Jordan reincorporates his answers to paragraphs 1-15 and paragraphs 56-75 as though stated herein.

122. **[*sic*]**      As a proximate result of the foregoing defamatory statements by Rick Jordan and Broderick Abbott, Luciano Aguayo suffered injuries including injuries to his reputation.

  **ANSWER:** Deny.

22

123. **[*sic*]**     Rick Jordan and Broderick Abbott knew that the statements were false, and the sole purpose of the conduct was to cause Luciano Aguayo personal and professional harm.

**ANSWER:**     Deny.

124. **[*sic*]**     The defamatory statements made by Rick Jordan were made to former employees of RedGear, and fellow employees of ReachOut, and to people that were friends of Luciano Aguayo.

**ANSWER:**     Deny.

125. **[*sic*]**     Rick Jordan made the defamatory statements for the sole purpose of inflicting maximum harm on Luciano Aguayo and served no other purpose.

**ANSWER:**     Deny.

124. **[*sic*]**     Broderick Abbott made slanderous, false, and defamatory statements to Luciano Aguayo's daughter solely to cause personal anguish and pain. The defamatory statements served no other purpose.

**ANSWER:**     Without knowledge.

125. **[*sic*]**     As a direct result of intentional conduct of Rick Jordan and Broderick Abbott, Luciano Aguayo has been damaged and has suffered immeasurable economic loss to his professional and personal reputation.

**ANSWER:**     Deny.

        WHEREFORE, Third-Party Defendant requests judgment in his favor, that this matter be dismissed, and that he be permitted to recover his costs.

## OBJECTION TO JURY TRIAL

Third Party Plaintiffs have waived any right to a jury trial in this matter pursuant to the

Membership Interest Purchase Agreement paragraph 11(h).

## AFFIRMATIVE DEFENSES

### 1. Unclean Hands

Third Party Plaintiffs are not entitled to any relief since they have engaged in misconduct, fraud, and bad faith connected to the transaction at issue in this litigation. This conduct includes, but is not limited to:

      a.      Failure to disclose all financial obligations of Red Gear;

      b.      The unauthorized use of ReachOut's internal email systems, infrastructure, licensing, employee labor, and other resources to service clients for the sole benefit of Third Party Plaintiffs;

      c.      The unauthorized retention of client payments for the sole benefit of Third Party Plaintiffs related to the above services;

      d.      The breach of Third Party Plaintiffs' obligations under the MIPA and their respective Employment Agreements; and

      e.      The claims as asserted against them by ReachOut in its Amended Complaint which are incorporated herein by reference.

### 2. Fraud in the Inducement

Third Party Plaintiffs are not entitled to any relief since they knowingly made false representations or omissions of material fact to ReachOut including, but not limited to, inaccurate and false financial information and other representations as asserted in these affirmative defenses and as asserted against them by ReachOut in its Amended Complaint which are incorporated herein by reference and upon which ReachOut relied in order to induce ReachOut to enter into the

Agreement. These false representations do not allow Third Party Plaintiffs to recover any damages from ReachOut and consequently they cannot claim these damages as against Jordan.

## 3. Breach of Contract

Third Party Plaintiffs have breached their Agreement with ReachOut as asserted as asserted in these affirmative defenses and as asserted against them by ReachOut in its Amended Complaint which breaches are incorporated herein by reference and therefore are not entitled to any damages from ReachOut and consequently cannot claim these damages as against Jordan.

## 4. Truth or Substantial Truth

Third Party Plaintiffs are not entitled to any relief since any statements made by Jordan were true or substantially true when made.

## 5. Lack of Reliance

Third party Plaintiffs are not entitled to any relief since ReachOut - as the buyer – did not warrant or provide any financial information. The Membership Interest Purchase Agreement ("MIPA") paragraph 6 contains the entire warranties and representations made by ReachOut and no other information is a part of the Agreement pursuant to the merger clause in paragraph 11(b) of the MIPA which reads öThis Agreement and the other Transaction Documents constitute the entire agreement among the Parties and supercedes any prior understandings, Contracts or representations by or among the Parties, written or oral, that may have related in any way to the subject matter hereof.ö . Therefore, Third Party Plaintiffs could not have relied or reasonably have relied upon any such information **prior to** entering into the Agreement. To the extent Third Party Plaintiffs rely on facts occurring **after** the Agreement was entered into, those facts cannot form the basis for a misrepresentation claim.

## 6. Business Judgment Rule

Third party Plaintiffs are not entitled to any relief since all decisions made by Rick Jordan as CEO of ReachOut were made as CEO of ReachOut - not personally - and on an informed basis, in good faith, and with the honest belief that the decisions and course of action taken was in the best interest of the corporation.

## 7. Impossibility of Performance

Third party Plaintiffs are not entitled to any relief since their actions made performance by ReachOut under the Note impossible by engaging in all of the misconduct asserted against them by ReachOut in its Amended Complaint; which is incorporated by reference.

## 8. No Guarantee

Third Party Plaintiffs are effectively attempting to assert a guarantee by Rick Jordan for the obligations of the corporate entity ReachOut. Jordan executed no such personal guarantee. Any obligation of ReachOut is solely that of ReachOut's. Third party Plaintiffs are not entitled to any such relief as there is no writing to indicate a guarantee to pay for the debt of another in violation of the Statute of Frauds as codified in 740 ILCS 80/1.

## 9. Failure to State a Claim Upon Which Relief Can be Granted

FRCP 14(a)(1) limits a third party defendant to "a nonparty who is or may be liable to it [the third party plaintiff] for all or part of the claim against it". The claim by ReachOut against the Third Party Plaintiffs has been dismissed by this Court. Therefore, Third Party Plaintiffs cannot be liable for any claim made against them by ReachOut which results in the inability to bring a third-party complaint in this action. Additionally, Count V of this Third-Party Complaint is not derivative of the original Plaintiff's claim, bears no relationship to the claim made against Third Party Plaintiffs by ReachOut, and therefore goes beyond the scope of a third party complaint allowed by FRCP 14(a)(1). The Third Party claims therefore fail to state a claim upon which

relief can be granted pursuant to FRCP 12(b)(6).

**10.  No Officer Liability for the Acts of a Corporation**

Third Party Plaintiffs are attempting impose liability on Jordan for the acts and obligations of ReachOut, a corporate entity.  As an officer of ReachOut, Jordan is not liable for ReachOut's acts or obligations.

WHEREFORE, Third-Party Defendant requests judgment in his favor, specifically denies that Third Party Plaintiffs have any right to recover attorney's fees, asserts that Third Party Plaintiffs have waived any right to a jury trial pursuant to the Agreement, and prays that this matter be dismissed and that he be permitted to recover his costs.

RICK JORDAN

BY:  /s/ Henry K. Becker
       Henry K. Becker, his attorney

Henry K. Becker  (ARDC #6187414)
Atty at Law
805 Lake St., #456
Oak Park, IL  60301
Tel: 312-278-3004
email: hb@hkb-law.com